IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ISMIE INDEMNITY COMPANY,** | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL NO. 24-3424 |
| | : | |
| **HARRAS BLOOM & ARCHER, LLC et al.,** | : | |
| *Defendants.* | : | |
| | : | |

Scott, J.                                                                                                           September 22, 2025

## MEMORANDUM

In its Complaint (ECF No. 1), Plaintiff ISMIE Indemnity Company ("ISMIE") asks the Court to declare that ISMIE has no duty to defend an ongoing malpractice action and to declare that ISMIE has no duty to indemnify in that same action (Count I), to find that ISMIE is entitled to rescind the malpractice insurance policy due to material misrepresentations (Count II), and to declare that ISMIE has no duty to indemnify any judgment proceeding out of a conversion claim in the ongoing malpractice action (Count III). Defendants Harras, Bloom & Archer, LLP ("HBA"), Linda Agnew, Paul Bloom, Keith Archer, and Tara McDevitt—who, collectively, were holders of an ISMIE-issued malpractice insurance policy—accuse ISMIE of attempting to shirk its coverage obligations and ask the Court to dismiss ISMIE's Complaint for failure to state a claim.

1

For reasons given below, the Court denies in part and grants in part Defendants' motion. Specifically, the Court denies Defendants' motion concerning the duty to defend claims and the recission claims. The Court grants Defendants' motion concerning the duty to indemnify claims.

## I. Background

### A. *The Underlying Action & The Malpractice Action*[1]

In *PeriRx, Inc. v. Regents of University of California* (the "Underlying Action"), PeriRx LLC hired Defendants in this action to represent it in a complex dispute about a patent licensing agreement. Some of PeriRx's claims were dismissed; later, the district court ultimately granted summary judgment to PeriRx's adversaries on the remaining claims; and then, even later, the Third Circuit affirmed the lower court's decisions.

After PeriRx received these adverse decisions, it initiated a legal malpractice action (the "Malpractice Action") against its counsel in the Underlying Action, bringing claims of negligence, breach of contract, and conversion. *See, e.g.*, *PeriRx, LLC v. Harras, Bloom & Archer, LLP*, 2025 WL 2447788, at *1 (E.D. Pa. Aug. 25, 2025) (denying in part and granting in part Defendants' motion to dismiss). That action is underway, and those parties are currently in discovery.

ISMIE, as Defendants' malpractice insurer, is currently funding the defense in the Malpractice Action. ISMIE, however, seeks in the instant action a declaratory judgment that would relieve ISMIE of its duties to defend and indemnify Defendants in the Malpractice Action.

### B. *The Insurance Policy*

On May 16, 2023, HBA submitted its application for a malpractice insurance policy from ISMIE. ISMIE accepted the application and issued a Lawyers Professional Liability Policy ("the

---

[1] In the interest of concision and because the Court writes for the benefit of the Parties, the Court opts to rehearse only briefly the most salient aspects of the Underlying Action and Malpractice Action. Readers interested in the factual and legal issues of those cases may consult them directly.

2

Policy") to HBA for a period of July 1, 2023 to July 1, 2024. ECF 1, ¶ 44; ECF 1-10. On October 28, 2023, HBA received a letter from an attorney, informing them of a potential malpractice claim against Defendants. On November 3, 2023, HBA informed ISMIE of the potential claim. On June 7, 2024, a former client of HBA's, PeriRx LLC, filed a malpractice complaint against the Defendants.

The Policy obligates ISMIE to "pay on behalf of the INSURED [i.e. HBA] all sums in excess of the deductible and up to the applicable limits of liability that the INSURED becomes legally obligated to pay as DAMAGES and CLAIMS EXPENSES as a result of any CLAIM first made against the INSURED during the POLICY PERIOD." ECF No. 1-10, § I.A. Under the Policy, a claim means "a written demand for money or non-monetary relief received by the INSURED for DAMAGES, including but not limited to, the service of suit or institution of arbitration proceedings against the INSURED . . . ." *Id.*, § VI.1. Additionally, the Policy outlines ISMIE's obligations when HBA faces a claim, namely that ISMIE will have "the right and duty to defend . . . in the INSURED's name and on the INSURED's behalf any CLAIM for DAMAGES against the INSURED, even if such CLAIM is groundless, false, or fraudulent . . . ." *Id.*, § III.1.

The Policy also outlines exceptions to when ISMIE will extend coverage to HBA. There are two exceptions relevant to this action. First, under Exclusion M (the "prior knowledge exclusion"), the Policy does not apply to any claim that is "based upon, arising out of, or attributable to any fact, circumstance, situation, act, error, omission, or PERSONAL INJURY which, prior to the inception date of the policy, any INSURED knew or reasonably should have known might give rise to a CLAIM." *Id.*, § VII.M. Second, under Exclusion I (the "conversion exclusion"), the Policy does not apply to any claim that "aris[es] out of conversion, misappropriation, or improper commingling of client funds." *Id.*, § VIII.I.

3

## II.     Legal Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). In addition to the complaint's factual allegations, the Court may consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *M&M Stone Co. v. Pennsylvania*, 388 Fed. Appx. 156, 162 (3d. Cir. 2010) (internal quotation marks and citation omitted).

This Court employs a three-step process to evaluate a 12(b)(6) motion to dismiss. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the Court articulates the elements of the claim. *Id.* Second, the Court reviews the complaint while disregarding formulaic recitations of the elements of a claim and any threadbare, conclusory allegations. *Id.* at 327-28. Third, the Court evaluates the plausibility of the remaining allegations while assuming the truth of the well-pleaded allegations, construing them in the light most favorable to plaintiff, and drawing all reasonable inferences in plaintiff's favor. *Id.* at 328.

### III. Discussion

A. *New York Law Governs This Action.*

The Policy lacks a choice-of-law provision, and the Parties dispute the applicable law. Defendant argues that New York substantive law applies to this action, and Plaintiff argues that Pennsylvania law applies because there is no actual conflict between Pennsylvania and New York substantive law. *Compare* ECF No. 15-1 at 15–16 (explaining that New York law applies under a conflict-of-laws analysis) *with* ECF No. 22 at 21–23 (arguing that there is no substantive difference between New York law and Pennsylvania law).

When a federal court sits in diversity, as this Court does here, the choice-of-law rules of the forum state apply. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). The Court only makes a choice-of-law analysis when there is a "'true conflict between the relevant laws' [and] where both jurisdictions' interests would be impaired by the application of the other's laws." *Burlington Insurance Co. v. Shelter Structures, Inc.*, 484 F. Supp. 3d 237, 240 (E.D. Pa. 2020) (quoting *Specialty Surfaces Intern., Inc. v. Continental Cas. Co.*, 609 F.3d 223, 230 (3d Cir. 2010)) (citation modified). "Pennsylvania applies a flexible rule which permits analysis of the policies and interests underlying the particular issue before the court and directs courts to apply the law of the state with the most interest in the problem." *Am. Guarantee & Liab. Ins. Co. v. L. Offs. of Richard C. Weisberg*, 524 F. Supp. 3d 430, (E.D. Pa. 2021) (quoting *Specialty Surfaces*, 609 F.3d at 229) (citation modified).

"[T]he first part of the choice of law inquiry is best understood as determining if there is an *actual* or real conflict between the potentially applicable laws." *Hammersmith*, 480 F.3d at 230 (emphasis in original). "[T]he second prong of the inquiry . . . [is to] determine if this is a true or false conflict." *Id.* at 232. When there is an actual and true conflict, the Court must then

"determine which state has the most significant relationship to this dispute" and apply that state's law. *Id.*

Defendant argues that there are three sources of conflict between New York and Pennsylvania laws: (1) the duty to defend, (2) the use of extrinsic evidence to evaluate the duty to defend, and (3) the right to recover attorneys' fees if Defendants prevail in this action. *See, e.g.*, ECF No. 15-1 at 15–16; ECF No. 25 at 1. Plaintiff counters that both jurisdictions analyze the applicability of the duty to defend under functionally identical standards and that both jurisdictions apply the same test to determine the applicability of a prior knowledge exception to insurance coverage. ECF No. 22 at 16–19. Plaintiff has not substantively responded to Defendant's third argument.

This Court finds that Pennsylvania courts and New York courts apply different laws when determining whether an insurer has a duty to defend. Pennsylvania courts apply the "four corners" rule to determine whether an insurer must defend an insured's claim. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) ("Pennsylvania adheres to the 'four corners rule' . . . To apply the four-corners rule, a court 'compar[es] the four corners of the insurance contract to the four corners of the complaint.'") (citation modified). The "four corners" rule does not permit a Court to determine whether a duty to defend exists by looking beyond the terms of the insurance contract and the allegations of the underlying complaint. *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) ("[T]he well-established precedent of this Court require[s] that an insurer's duty to defend and indemnify be determined *solely* from the language of the complaint against the insured.") (emphasis added).

New York law permits courts to look beyond the terms of an insurance contract and the allegations of the underlying complaint. For instance, courts applying New York law may also

consider extrinsic evidence to determine whether an insurer must defend its insured. *See, e.g., Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 66 (N.Y. 1991) ("[W]here the insurer is attempting to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involved a covered event, wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify—clearly an unacceptable result."); *Century Sur. Co. v. EM Windsor Constr., Inc.*, 2017 WL 5952706, at *7 (S.D.N.Y. Nov. 29, 2017) ("The allegations in the complaint are not, however, in all cases, the *sole* determining consideration" when applying New York law to determine whether an insurer has a duty to defend) (citation modified). Hence there exists an actual conflict.

This conflict is also a true one because the interests of Pennsylvania and New York are implicated. *Hammersmith*, 480 F.3d at 230. The Malpractice Action was venued in the Eastern District of Pennsylvania, meaning that Pennsylvania has an interest in the application of its law to this action that is connected to the Malpractice Action. New York also has an interest in seeing its laws applied; Defendant HBA's principal place of business is in New York and the Policy was issued in New York. ECF No. 15-1 at 15. In brief, the application of one state's law would impair the interests of the other state, and that is enough to create a true conflict. *Specialty Surfaces*, 609 F.3d at 223.

As the final analytical step, this Court concludes that New York has the greater policy interest. This case involves a New York firm and New York lawyers as Defendants and an insurance policy that was issued in New York by a non-Pennsylvania company. Those interests prevail over Pennsylvania's interest in this action, which is reducible to the fact that the Malpractice Action took place in the Eastern District of Pennsylvania. Accordingly, this Court applies New York law.

B. *The Duty to Defend Claim and the Recission Claim Are Not Dismissed.*

As Defendants concede, Plaintiff's duty to defend claim relies on a "notoriously fact intensive" dispute, including whether, under the Policy's prior knowledge exclusion, a reasonable insured knew or should have anticipated a forthcoming malpractice claim at the time Defendants submitted their insurance application to ISMIE. ECF No. 15-1 at 6; *see also* ECF No. 25 at 9 (Defendants asking the Court to consider the "total factual context"). Plaintiff alleges that, prior to the inception of the ISMIE Policy, Defendants knew or should have known—largely based on comments made by the District Court and Third Circuit in the Underlying Action—that a malpractice claim was forthcoming. *See, e.g.*, ECF 1, ¶¶ 84–98. Those allegations are enough to survive a motion to dismiss, where the Court must construe all well-pleaded allegations as true and in a light favorable to Plaintiff. Accordingly, the Court does not find it proper at this juncture to dismiss Plaintiff's duty to defend claims.

Defendants claim that "ISMIE fails to allege sufficient facts that Defendants knew or a reasonable attorney standing in its shoes would have foreseen that PeriR[x] would file a malpractice claim." ECF No. 15-1 at 17. The Court disagrees. ISMIE has alleged facts that make its claim for relief sufficiently plausible under a notice pleading regime as required by Rule 8 of the Federal Rules of Civil Procedure. The Parties at bottom are expressing a factual disagreement about what Defendants knew or should have known at the time the Defendants submitted their insurance application. This type of disagreement is not properly resolvable on a motion to dismiss.

Because the Parties concede that the recission claim mirrors the duty to defend claim, *see* ECF 15-1 at 24; ECF 22 at 29, the Court denies Defendants' Motion to dismiss the recission claim for similar reasons.

C. *The Duty to Indemnify Claim and the Claims concerning Exclusion I Are Dismissed as Premature.*

Plaintiff's third claim asks this Court to declare that it has no duty to indemnify the Defendants in the event that Defendants are held liable in the malpractice action. *See e.g.*, ECF 1, ¶¶ 109–12. The Court agrees with Defendants that this claim is inopportune.

There is ample case law to support the proposition that the determination of the duty to indemnify "necessarily depends on facts that will be decided in the underlying . . . action." *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 372–73 (S.D.N.Y. 2020) (also collecting cases). Such facts include those related to whether Defendants exercised ordinary skill and knowledge and whether Defendants' alleged failures proximately caused Plaintiff's injuries. *See PeriRx LLC*, 2025 WL 2447788, at *5. Because the Malpractice Action is still in its beginning stages—where the parties in that action have only recently begun discovery—the facts necessary to determine whether Plaintiff has a duty to indemnify Defendants will remain undetermined until discovery has run its course. The Court therefore dismisses the duty to indemnify claim as premature.

The Court agrees with Defendants that Plaintiff's request for declaratory judgment concerning the applicability of Exclusion I is effectively a request that the Court declare Plaintiff has no duty to indemnify Defendants with respect to the conversion claim. ECF No. 15-1 at 25. The Court has already held in the Malpractice Action that the conversion claim is subject to an enforceable arbitration clause, and the ultimate outcome of that arbitration remains unknown. *See, e.g.*, *PeriRx, LLC*, 2025 WL 2447788 at *3–*4 (compelling arbitration concerning the conversion claim in the underlying malpractice litigation). For the same reasons that the duty to indemnify claim in relation to the Malpractice Action is premature, so too is it premature to weigh in on

Plaintiff's indemnification obligations regarding the conversion claim. That claim is accordingly dismissed.

## IV.    Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendants' motion to dismiss. An order will be issued separately.